UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ELENA BRASSEAUX and** | * | **CIVIL ACTION NO.** __27-cv-1722__ |
| **JULIAN GARCIA** | * | |
| | * | **SECTION:** |
| *Plaintiffs*, | * | |
| | * | |
| *v.* | * | |
| | * | |
| **FOUAD JR. VENTURES, LLC d/b/a** | * | |
| **MAGNOLIA DISCOUNT, FOUAD** | * | |
| **ZETON, LUISA ZETON, and SHELL** | * | |
| **OIL PRODUCTS COMPANY, LLC** | * | |
| | | |
| *Defendants.* | | |
| * * * * * * * * * * * * * * * * * * | * | |

# COMPLAINT

NOW INTO COURT, through undersigned counsel, come Plaintiffs, ELENA BRASSEAUX and JULIAN GARCIA, in the above entitled and numbered cause seeking recovery of earned wages from Defendants, FOUAD JR. VENTURES, LLC d/b/a MAGNOLIA DISCOUNT, FOUAD ZETON, LUISA ZETON, and SHELL OIL PRODUCTS COMPANY, LLC, their former employers, for violations of the Fair Labor Standards Act and Louisiana Wage Payment Act, and seeking a judgment of this Court for recovery of earned wages, penalty wages, interest, attorney fees, and costs, hereby alleging as follows:

## JURISDICTION AND VENUE

1.

This action includes violations of the Fair Labor Standards Act, 29 U.S.C. 201, *et seq.*, ("FLSA"). This predominant action herein gives rise to the jurisdiction in this Court pursuant to

28 U.S.C. §1331. Additional causes of action under state law include violations of the Louisiana Wage Payment Act, La. R.S. 23:631, *et seq*.

2.

Defendants herein, Fouad Jr Ventures, LLC d/b/a Magnolia Discount, Fouad Zeton, and Luisa Zeton are domiciled in this District. Furthermore, events or omissions giving rise to the instant lawsuit all occurred within the Eastern District of Louisiana where Defendants' businesses are located. Venue lies in this Court over these claims pursuant to 28 U.S.C. ¶ 1391(b)(1) and (b)(2).

**PARTIES**

3.

Named Plaintiff herein is:

a. ELENA BRASSEAUX ("Ms. Brasseaux" or "Plaintiff") domiciled in the Parish of Orleans, State of Louisiana, and who is a person of the full age of majority with procedural capacity to bring this action.

b. JULIAN GARCIA ("Mr. Garcia" or "Plaintiff") domiciled in the Parish of Jefferson, State of Louisiana, and who is a person of the full age of majority with procedural capacity to bring this action.

4.

Made Defendants herein and indebted to Plaintiff for payment of minimum wages, final regular wages, overtime wages, penalties, attorney fees and other amounts provided for under law are:

a. FOUAD JR VENTURES, LLC d/b/a "MAGNOLIA DISCOUNT," ("Magnolia Discount" or "Defendant Magnolia Discount") is a Louisiana Limited Liability

    Company operating a gas station and convenience store business at multiple locations in the Greater New Orleans metropolitan area. LUISA ZETON is the sole member/manager of Magnolia Discount and is domiciled at 905 West William David Parkway, Metairie, LA, 70005. Magnolia Discount does business in Orleans Parish and this State, and was Plaintiffs' former employer, with a domicile address at 905 West William David Parkway, Metairie, LA, 70005, and can be served through their Registered Agent, Daviller Law Group, LLC, at 935 Gravier Street, #1702, New Orleans, LA 70112.

b.  FOUAD ZETON ("Mr. Zeton" or "Defendant"), an individual of the full age of majority who resides in Jefferson Parish in the Eastern District of Louisiana, who was Plaintiffs' former employer and supervisor, and manages and supervises employees of Magnolia Discount, and can be served at 905 West William David Parkway, Metairie, LA, 70005.

c.  LUISA ZETON ("Mrs. Zeton" or "Defendant"), an individual of the full age of majority who resides in Jefferson Parish in the Eastern District of Louisiana, who was Plaintiffs' former employer and supervisor, and is the listed member and manager of Fouad Jr Ventures, LLC d/b/a Magnolia Discount and spouse of Mr. Zeton, and can be served at 905 West William David Parkway, Metairie, LA, 70005.

d.  SHELL OIL PRODUCTS COMPANY, LLC ("Shell"), is a foreign limited liability company that does business in Orleans Parish and this State, and was Plaintiffs' former employer, whose members/managers are Emma J. Lewis and Bernardo Franco, 105 N. Dairy Ashford, Houston, Texas 77079, and an LLC domicile

3

    address at 1209 Orange Street, Wilmington, DE 19801, and can be served through their Registered Agent, C T Corporation System, 3867 Plaza Tower Dr., Baton Rouge, LA 70816.

 e. Defendants Magnolia Discount, Fouad Zeton, Luisa Zeton, and Shell are collectively referred to herein as "Defendants."

5.

Under La. R.S. 23:631(B), the Louisiana Wage Payment Act ("LWPA"), Plaintiff is entitled "to file an action to enforce such a wage claim and proceed pursuant to Code of Civil Procedure Article 2592 [Summary Proceeding]." The summary proceeding may be in the form of a rule to show cause, served upon the defendant, without the necessity of citation and service. La. Code Civ. Proc. art. 2593 and 2594. After such reasonable notice, this summary proceeding may be tried in open court or in chambers, in term or in vacation with evidence heard and introduced, without a jury, and with preference over ordinary proceedings. La. Code Civ. Proc. art 2595. Plaintiffs reserve the right to seek a summary proceeding in this matter on their LWPA claims.[1]

6.

Federal Courts in Louisiana have also recognized the summary mechanisms of Louisiana's Wage Payment Act in its procedure. In *Gomez v. Biomet 3I, LLC*, Judge Milazzo denied defendant's request for remand and noted that "[t]he fact that state courts follow a different procedure for LWPA claims than other claims does not constitute a special state forum." *Gomez v Biomet 3i*, LLC 2021 WL 5822637 at *2 (E.D. La. 2021). The Court in *Gomez* further stated "that Plaintiff has also raised arguments regarding his entitlement to expedited consideration of his claim and the permissibility of Defendant's counterclaim. The Court advises that it will consider these

---

[1] *See McDowell v. Perkinelmer Las, Inc.*, 369 F. Supp. 2d 839 (M.D. La. 2005).

issues if the appropriate motions are filed." *Id*. at *3. Thus, Ms. Brasseaux anticipates moving for expedited consideration of her LWPA claims in conformity of the language and public policy of the LWPA.

## FACTUAL BACKGROUND

**Elena Brasseaux**

6.

On or around July of 2024, Ms. Brasseaux applied to a cashier position that was advertised on craigslist by "Magnolia Discount Shell gas station." This gas station is located on the corner of North Claiborne and Elysian Fields Avenue in New Orleans, 1601 Elysian Fields Ave, New Orleans, LA 70117 (hereinafter referred to as the Elysian Field Magnolia Discount Shell").

7.

On or around July 18, 2024, Fouad Zeton, who identified himself as the manager and owner of the Elysian Field Magnolia Discount Shell, invited Ms. Brasseaux to interview for the hourly cashier position. The interview concluded with Mr. Zeton asking Ms. Brasseaux if she wanted to come in and start training that evening at 6:00 P.M. – Ms. Brasseaux agreed and worked her first shift at the Elysian Field Magnolia Discount Shell that evening.

8.

Luisa Zeton is Fouad Zeton's spouse and is a member and manager of Fouad Jr. Ventures, LLC. Fouad Jr. Ventures, LLC is the entity doing business as Magnolia Discount. Luisa Zeton authorized Fouad Zeton at all times to supervise and interact face to face with the Elysian Field Magnolia Discount Shell employees and make all decisions in furtherance of their business venture.

9.

From her hire date onward, Ms. Brasseaux worked overnight shifts at the Elysian Field Magnolia Discount Shell. She started her shifts at 6:00 P.M., and her shifts ended when Defendants (via Mr./Mrs. Zeton or another employee directed by Mr./Mrs. Zeton) would instruct Ms. Brasseaux to leave, usually anywhere between 7:30 A.M. and 8:30 A.M.

10.

Ms. Brasseaux was responsible for operating the cash register, organized and stocked products, and kept an eye on the premises, and assisted at least six other new hires who began working at the gas station. Defendants expected Ms. Brasseaux to be on her feet for the entire shift.

11.

Ms. Brasseaux's shift was supervised by Defendants via security cameras. Mr./Mrs. Zeton usually worked from their office, which was equipped with security cameras showing various angles of the Elysian Field Magnolia Discount Shell. Occasionally, Defendants would send a text message to Ms. Brasseaux with a screenshot of the security camera to ask Ms. Brasseaux about what was going on in the store.

12.

Ms. Brasseaux received instructions at the end of her shift from Defendants (via Mr./Mrs. Zeton or another employee directed by Mr./Mrs. Zeton) when she was expected to return for another shift. Ms. Brasseaux worked almost every day until she was constructively terminated. The excessive work schedule resulted in her working well over 40 hours in a 7 day workweek. However, Ms. Brasseaux was never paid at an overtime rate for any of these overtime hours.

13.

On August 2, 2024, Ms. Brasseaux had not been paid for any of the over 180 reported hours she worked. Ms. Brasseaux inquired to Defendants about the delay in pay because she could not

pay for her electricity bill, which was around $300. Instead of paying the owed wages forthwith, Mr. Zeton offered to pay her electricity bill while she was waiting for earned wages. Ms. Brasseaux agreed to this arrangement, with the understanding that her outstanding wages would be paid soon thereafter. Kristina, an employee who did work on behalf of Defendants, paid Ms. Brasseaux's electricity bill after the agreement.

14.

On or around August 6, 2024, Ms. Brasseaux texted Kristina because she still had not been paid owed wages for 189 hours of work she performed. Ms. Brasseaux's text message stated as follows:

> "My math shows I am owed (and I am being very generous at 8.00 per hour) 1512.00
>
> Training days… I used 7.35 an hour. (the lowest minimum wage you can be paid) That came out to 300.00.
>
> Of which was paid to me already. I am not unreasonable or unfair. I just want what I am owed. If you see any discrepancy with my math, please enlighten me."

With no confirmation that she would receive her paycheck as agreed, Ms. Brasseaux did not return to work that day and was constructively terminated on or around August 6, 2024.

15.

Kristina relayed Ms. Brasseaux's demand for pay to Defendants. On August 8, 2024, Kristina texted Ms. Brasseaux that Mr. Zeton would be available at the Elysian Field Magnolia Discount Shell to "discuss" the matter on August 11, 2024 at 6:00 P.M, but not to tender payment to Ms. Brasseaux.

16.

By August 15, 2024, Ms. Brasseaux still had not been paid for any of the hours she worked (besides the $300 electricity bill) nor received instructions about when (or where) to pick up her

7

paycheck. Ms. Brasseaux sent another text message to Kristina to inquire about when she would be paid. The text message chain concluded as follows:

> **Ms. Brasseaux:** When I am expected to be paid for my employment there?
>
> **Kristina:** I think I asked you to come last Sunday for your pay. But you didnt show up. So it will be this Sunday then. I will confirm with him.
>
> **Ms. Brasseaux:** Why should I have to wait until NEXT Sunday?
>
> **Kristina:** Girl its not my fault you missed last Sunday.
>
> **Ms. Brasseaux:** OK. This is not acceptable. It's getting ridiculous.

Ms. Brasseaux was not paid that Sunday or the following Sunday.

17.

To date, Ms. Brasseaux has not received any pay for at least 189 hours of work she performed for Defendants.[2] These unpaid hours encompass at least 75 hours worked at a regular minimum wage for all hours under 40 worked in a seven day period, and at least 114 unpaid hours worked at 1.5 times her regular rate of pay for all hours over 40 worked in a seven day period.

**Julian Garcia**

18.

On or around March 6, 2023, Julian Garcia was approached by Fouad Zeton while waiting to pick up a job at the Lowe's parking lot in Metairie. Mr. Garcia recognized Mr. Zeton because he had previously been employed at Mr. Zeton's other businesses, Dante's Pizza and the Magnolia Mansion. Mr. Zeton identified himself as the manager and owner of a newly-opened Elysian Field Magnolia Discount Shell and offered Mr. Garcia a job as a cashier.[3]

19.

---

[2] This number is a rough estimation of Ms. Brasseaux's unpaid hours, and Ms. Brasseaux reserves the right to pursue additional unpaid wages should more unpaid hours be discovered.

[3] This is the same location Ms. Brasseaux worked at as described in ¶¶ 6-17.

Mr. Zeton informed Mr. Garcia that he would be paid hourly and earn at least $800 per workweek.

20.

On or around March 6, 2023, Mr. Garcia started his first shift as a cashier at the Elysian Field Magnolia Discount Shell at 6:00 P.M. From his hire date onward, Mr. Garcia worked continuous overnight shifts at the Elysian Field Magnolia Discount Shell. He started his shifts at 6:00 P.M., and his shifts ended when Defendants (via Mr./Mrs. Zeton or another employee directed by Mr./Mrs. Zeton) would instruct Mr. Garcia to leave, usually anywhere between 8:00 A.M. and 9:00 A.M.

21.

Mr. Garcia mainly stocked refrigerated items in the coolers, assisted with the cash, cleaned, and kept an eye on the premises. Defendants expected Mr. Garcia to keep busy and remain on his feet for the entire shift.

22.

Mr. Garcia received instructions at the end of his shift from Defendants (via Mr./Mrs. Zeton or another employee directed by Mr./Mrs. Zeton) when he was expected to return for another shift. Mr. Garcia worked 12-14 hour shifts almost every day until he was terminated. The excessive work schedule resulted in him working well over 40 hours in a 7 day workweek. However, Mr. Garcia was never paid at an overtime rate for any of these overtime hours.

23.

On or around two weeks into his employment, Mr. Garcia still had not been paid for *any* of the hours he had worked. Mr. Garcia complained to Defendants that he would not be able to afford his rent if he was not paid soon. In response, Mr. Zeton offered Mr. Garcia $100 in cash to

continue working while promising his earned wages would be ready in the coming days. Mr. Garcia agreed to this arrangement, with the understanding that his outstanding wages would be paid soon thereafter.

24.

On or around March 19, 2023, Mr. Zeton handed Mr. Garcia and other employees at the Elysian Field Magnolia Discount t-shirts bearing the "Shell V-Power Nitro+" brand. Defendants had employees pose in the store wearing the t-shirts bearing the Shell logo in order for the Zeton's to send to Shell's corporate office to ensure compliance with Shell's directives.

25.

On or around March 21, 2023, Mr. Garcia carpooled with another female cashier, but they arrived late for their shift at the Elysian Field Magnolia Discount late. Mr. Zeton became angry with Mr. Garcia and terminated him. This termination was pretextual, as Defendants decision to terminate Mr. Garcia was just after (and a result of) his vociferous complaints as to the wage violations and nonpayment of earned wages, and in fact retaliation for those complaints of labor violations.

26.

After he was terminated, Mr. Garcia again demanded his earned wages on several occasions from Defendants and Mr. Zeton.

27.

To date, Mr. Garcia has not received any outstanding pay for at least 168 hours of work he performed for Defendants.[4] These unpaid hours encompass at least 80 hours worked at an hourly

---

[4] This number is a rough estimation of Mr. Garcia's unpaid hours, and Mr. Garcia reserves the right to pursue additional unpaid wages should more unpaid hours be discovered.

wage of $9.50[5] for all hours under 40 worked in a seven day period, and at least 88 unpaid hours worked at 1.5 times his regular rate of pay for all hours over 40 worked in a seven day period.

## CAUSES OF ACTION

### VIOLATION OF THE FAIR LABOR STANDARDS ACT ("FLSA") 29 U.S.C. § 207

28.

Plaintiffs incorporate and adopt all above numbered paragraphs as if fully stated herein.

29.

The FLSA requires that employers pay employees at a rate not less than one and one-half times the regular rate at which they are employed for all hours worked beyond forty hours in a workweek. 29 U.S.C. § 207.

30.

Defendants' business activities involve those to which the FLSA applies. Both the Defendants' business and Plaintiffs' work for the Defendants affected interstate commerce for the relevant time period because the materials and goods Plaintiffs used and was supplied by the Defendants moved through interstate commerce prior to and/or subsequent to Plaintiffs' use of the same.

31.

Upon information and belief, Defendant Shell and Defendant Magnolia Discount each had gross sales or business done in excess of $500,000 annually for the years 2023 and 2024.

32.

---

[5] This number is based on 12 hour shifts 7 days a week.

Defendants, and its representatives, directed the means and manner in which Plaintiffs were compensated. Defendants Magnolia Discount, Fouad Zeton, and Luisa Zeton exercised discretion over hiring/terminating Plaintiffs, and Plaintiffs' compensation. Shell contracts with the Magnolia Discount and Zeton Defendants, providing ultimate policies on operations, employment/employee requirements, hours of operation, etc., even down to the attire requiring Shell uniforms be worn.

33.

Ms. Brasseaux and Mr. Garcia were non-exempt employees hired by Defendants and were owed one half times the regular rate at which they were employed for all hours worked beyond forty hours in a workweek. 29 U.S.C. § 207. Working daily 13 hour shifts over an 18 day period, Ms. Brasseaux worked an estimated 114 overtime hours but received no pay at an overtime rate. Working daily 12-14 hour shifts over a 14 day period, Mr. Garcia worked an estimated 88 overtime hours but received no pay at an overtime rate.

34.

Defendants' nonpayment of overtime to Plaintiffs was and is knowing, willful, reckless, and not based in a good faith belief that their conduct was in accordance with the law.

### VIOLATION OF THE LOUISIANA WAGE PAYMENT ACT ("LWPA") LA. R.S. 23§631, *ET SEQ*.

35.

Plaintiffs incorporate and adopt all above numbered paragraphs as if fully stated herein.

36.

In pertinent part, La. R.S. 23:631 states:

A. (1)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next

12

regular payday or no later than fifteen days following the date of discharge, whichever occurs first.

(b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

(2) Payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee's or laborer's current address as shown in the employer's records. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or other official documentation from the United States Postal Service.

30.

Ms. Brasseaux was constructively terminated due to nonpayment of her wages on or around August 6, 2024, and Mr. Garcia was terminated in retaliation by Defendants on or around March 21, 2023.

31.

To date, Defendants have refused to relinquish Plaintiffs' final paychecks. In addition to their separate claim under the FLSA for overtime wages set forth in ¶¶ 18-22, Ms. Brasseaux has not been paid for at least 75 hours of work performed at a minimum wage rate for hours amounting to 40 in a seven day workweek, resulting in at least $543.75 in unpaid wages in violation of the LWPA, and Mr. Garcia has not been paid for at least 80 hours of work performed at an hourly rate of $9.50 for hours amounting to 40 in a seven day workweek, resulting in at least $760.00 in unpaid wages in violation of the LWPA.

32.

Defendants' failure and/or refusal to comply with La. R.S. 23:631 is not in good faith, and results in statutory penalties and Defendants "shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made." La. R.S. 23:632(A). The mandatory statutory penalties have fully accrued.

33.

"Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation." La. R.S. 23:632(C).

**WHEREFORE**, Plaintiffs, Elena Brasseaux and Julian Garcia, pray that this Court render a judgment against Defendants, FOUAD JR. VENTURES, LLC d/b/a MAGNOLIA DISCOUNT, FOUAD ZETON, LUISA ZETON, and SHELL OIL PRODUCTS COMPANY, LLC, for all amounts due and owing together with legal interest thereon from the date of judicial demand until paid, for all penalties and reasonable attorney's fees provided for pursuant to 29 U.S.C. § 207 and Louisiana Revised Statute 23:632, for all costs of these proceedings, and for all general and equitable relief as Plaintiffs may be entitled under law.

Respectfully Submitted:

_____/s/ Kenneth C. Bordes_____
**Kenneth C. Bordes (Bar #35668)**
KENNETH C. BORDES,
ATTORNEY AT LAW, LLC
3914 CANAL ST.
NEW ORLEANS, LA 70119
P: 504-588-2700
F: 504-708-1717
E: KCB@KENNETHBORDES.COM

*Attorney for Elena Brasseaux and Julian Garcia*